IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

BRIAN BACON,

Plaintiff,

Civ. Action No.
9:01-CV-1688 (DEP)

vs.

UNITED STATES OF AMERICA,

Defendant.

---

APPEARANCES: OF COUNSEL:

FOR PLAINTIFF:

BOIES, SCHILLER LAW FIRM[1] ADAM R. SHAW, ESQ.
10 North Pearl Street ANNE NARDACCI, ESQ.
4th Floor
Albany, NY 12207

FOR DEFENDANT:

HON. GLENN T. SUDDABY WILLIAM F. LARKIN, ESQ.
U.S. ATTORNEY
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198

---

[1] Shortly prior to commencement of the trial in this matter, the firm of Boies, Schiller & Flexner, LLP was assigned to represent the plaintiff in this matter, who until then had been proceeding *pro se*. The court appreciates the extensive energy and effort expended on plaintiff's behalf, *pro bono*, by the attorneys designated by that firm to handle the case.

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER

Plaintiff Brian Bacon, a prison inmate entrusted at the relevant times to the custody of the United States Bureau of Prisons ("BOP"), has commenced this action against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671 *et seq.*, based upon an incident occurring in December of 2000 at the Ray Brook Federal Correctional Institution ("FCI Ray Brook"). Stripped of its procedural and jurisdictional niceties, this is a simple negligence action. In his complaint, Bacon asserts that prison officials breached the duty of care owed to him during the course of escorting him back to his cell from a meeting with prison officials by allowing him to climb a set of stairs alone while handcuffed, and that as a result of their actions he fell, suffering a laceration to his head and resulting in lingering, disabling head and back conditions. As relief, plaintiff seeks recovery of damages for pain and suffering, quantified at $100,000 by him at trial.

Plaintiff's claims were tried to the court, beginning on September 17,

2007.[2] Based upon the evidence adduced at trial, I find that the plaintiff has failed to establish negligence on the part of BOP officials by a fair preponderance of the evidence, and therefore find in favor of the defendant in connection with his claims. The following constitutes the court's findings of fact and conclusions of law, based upon the evidence presented during the trial.

## I. BACKGROUND

At the times relevant to his claims, plaintiff was a prison inmate entrusted to the custody of the BOP, and designated to FCI Ray Brook, located in Ray Brook, New York, and within the geographical boundaries of this district.[3] Plaintiff's incarceration stems from a 1995 conviction entered in the United States District Court for the Western District of Virginia for possession, with intent to distribute, cocaine, in violation of 21 U.S.C. § 841(a)(1), resulting in the imposition of a sentence which included,

---

[2] By agreement, the parties have submitted to the jurisdiction of a United States Magistrate Judge to address the dispositive aspects of the case, pursuant to 28 U.S.C. § 636(c). *See* Dkt. No. 13. While the consent originally given by the parties was to the jurisdiction of Chief United States Magistrate Judge Gustave J. DiBianco, to whom this matter was previously assigned, at trial the parties confirmed their continued consent to magistrate judge jurisdiction despite the subsequent transfer of the matter to me.

[3] Since the incident in question plaintiff has been transferred among various other BOP facilities and is currently confined in LSCI-Allenwood, a lower security correctional institution located in White Deer, Pennsylvania.

principally, a one hundred fifty month term of imprisonment.

On December 19, 2000, the date of the incident forming the basis for his claims in this action, Bacon was assigned for disciplinary reasons to a second floor, two-inmate cell within the prison's special housing unit ("SHU"). The SHU at FCI Ray Brook is comprised of a series of first and second floor cells, visible from a central hub area. Each cell includes a door with a small plexiglass window and an additional port, described as a "wick", which can be unlocked and opened for use in applying and removing hand restraints from inmates. While in SHU confinement, BOP inmates are typically confined to their cells twenty-three hours a day, and are afforded daily recreation during weekdays for a period of one hour.

The hallways adjacent to the first and second floor cells within the SHU are protected by wire mesh. A metal stairway leads from the first floor to the second tier of cells. At the top of that stairway is a square landing, measuring approximately four feet on each side, leading to a metal framed, wire meshed door which, when not used, remains closed and locked. The cell in which plaintiff was housed at the relevant times is approximately the second to the right of the door located at the top of the stairs, when viewed from the perspective of the central rotunda area looking upward toward the

second level.

On the evening of December 19, 2000, plaintiff was taken from his cell and escorted downstairs to a room located on the first floor of the SHU for a meeting with Corrections Lieutenant Troy Carlson. The purpose of the meeting was to facilitate an investigation by Lieutenant Carlson into allegations that plaintiff and another SHU inmate, Carlos Lopez, were planning to smuggle controlled substances into the prison facility.[4] At the conclusion of that meeting Senior Officer Specialist Steven Robla was assigned to escort Bacon back to his cell.[5]

At approximately 7:30 p.m. on that date, while accompanied by Officer Robla, plaintiff stumbled on the stairway leading to the second tier, striking his head on the metal door at the top of the stairway and suffering a laceration of approximately two inches in length over his right eye. At the

---

4 Based upon his investigation, Lieutenant Carlson concluded that there was sufficient evidence to support the charge, and recommended that the matter be referred for a disciplinary hearing with a recommendation that if convicted, plaintiff suffer punishment which would include the loss of good time credits, an additional period of disciplinary segregation, and the loss of various privileges, together with a disciplinary transfer to another facility. During their trial testimony, offered by way of videotaped depositions, both the plaintiff and Lopez admitted having planned to smuggle contraband into the facility, against prison regulations, but claimed that the contraband in question was jewelry, vehemently denying that drugs were involved.

5 Robla, a twenty year veteran with the BOP, is currently employed as a corrections lieutenant at another BOP facility.

time of the incident plaintiff was handcuffed behind his back, and was wearing shower slippers.

The versions given at trial of the events surrounding plaintiff's accident were sharply conflicting. Plaintiff, whose testimony was corroborated by that of fellow inmate Carlos Lopez, although with some variances, stated that at the time of the incident he was climbing the stairs between the first and second tiers, with his hands restrained behind his back, without accompaniment.[6] According to Bacon, while in the process of escorting him back to his cell Officer Robla was summoned momentarily by Lieutenant Carlson, causing him to release his hold on Bacon prior to reaching the bottom of the stairs. Bacon maintains that it was not until he climbed the stairs, unaccompanied, and in the process fell, that Officer Robla returned to assist him.

Officer Robla, by contrast, states that at all times, including when the incident occurred, he maintained a grip on the bicep area of plaintiff's left arm, near his elbow, and that when the fall occurred he retained that grasp, causing the plaintiff to swing around and strike his head on the door,

---

[6] Lopez, whose true identity is Carlos Vargas, was at the time also serving a federal sentence on a drug-related conviction, entered in 1996, and has since been sentenced to an additional period of incarceration based upon a finding that he violated the terms of his supervised release in connection that conviction.

thereafter gently falling to the landing at the top of the stairs. According to Robla, the incident was precipitated by the plaintiff who, while ascending the stairs, bent down to continue a conversation with inmate Lopez, whose cell was on the first tier, and to permit him to maintain eye contact with Lopez for as long as possible. Immediately prior to reaching the top step, Robla testified, Bacon resumed an upright position and, when Robla reached to swing open the range door, caught his shower shoe on the last step, falling forward and striking his forehead on the door.[7]

Following the incident, Senior Officer Specialist Fred Mason, who at the time of the fall was returning another inmate to a cell located on the second tier of the SHU, came to Bacon's assistance, applying direct pressure to the wound utilizing a sterile gauze pad which Mason carried in his fanny pack. Lieutenant Carlson was promptly notified of the accident by Officer Robla, and plaintiff was eventually stabilized and removed to a secure room in the SHU, and prison medical officials were summoned.[8]

---

   [7]   As will be seen, I credit Officer Robla's version of the events, and specifically find that at no time during the transition back toward plaintiff's cell from the meeting with Lieutenant Carlson did Officer Robla release his hold on the plaintiff. *See* pp. 16 - 17, *infra.*

   [8]   While equivocating on this score during his trial testimony, when questioned by medical officials following the incident plaintiff denied any loss of consciousness following the fall and resulting head injury.

Plaintiff was thereafter taken to the prison medical unit where six sutures were applied to close his wound, and analgesics were administered in order to ease the pain.

Plaintiff claims that as a result of the incident he has suffered lingering and debilitating effects that include persistent headaches and lower back pain. Plaintiff's medical records substantiate the fact that over time he has periodically complained of back and head pain, for which he has been prescribed a mild non-steroidal prescription analgesic, anti-inflammatory drug. While there is no medical evidence in the record revealing the existence of a medical condition which would cause headaches, the record does contain evidence suggesting that plaintiff has undergone severe disc degeneration of his lower back, although the medical evidence does not directly link the plaintiff's back condition to the incident in question. There is also evidence in plaintiff's medical records to suggest the existence of pre-existing conditions capable of causing both back pain and headaches stemming from various injuries pre-dating the December 19, 2000 fall, including a basketball injury to his back in or about 1992; a pulled back muscle suffered in 1998 while playing basketball; an assault by a fellow inmate in 1993, during which he was stabbed in the head, causing him to

experience headaches; and a bumped forehead suffered in January of 2000, also while playing basketball. The evidence submitted at trial regarding plaintiff's activities at LSCI-Allenwood reveals that despite his injuries Bacon has been extremely active physically, having participated in the "A" basketball league at the facility and qualified as a basketball referee. The evidence adduced at trial also revealed that notwithstanding his injuries, plaintiff is able to exercise both vigorously and with regularity.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on November 5, 2001. Dkt. No. 1. In his complaint plaintiff has named the United States as a defendant, and asserts a claim of negligence based upon the actions of BOP employees at FCI Ray Brook, and principally Officer Robla. *Id.* Issue was subsequently joined on February 21, 2002 by the filing of an answer on behalf of the government. Dkt. No. 8. In its answer, *inter alia,* the defendant has denied any wrongdoing and asserts various affirmative defenses including the existence of negligence on the part of plaintiff, constituting both an intervening event negating the element of proximate cause or, at a minimum, forming a basis for apportionment of liability based upon comparative

negligence.[9] *Id.*

On July 2, 2003, Chief United States Magistrate Judge Gustave J. DiBianco issued a decision granting a motion filed by the defendant and directing the entry of summary judgment dismissing plaintiff's complaint. Dkt. No. 25. In that decision Judge DiBianco concluded, as a matter of law, that even accepting plaintiff's version of events, his decision to continue up the stairs, unescorted by Officer Robla, nonetheless constituted an intervening cause of his injuries thereby negating the element of proximate cause and thus relieving defendant of legal responsibility for the incident. *Id.*

The judgment subsequently entered, based upon that decision, was ultimately reversed on appeal to the United States Court of Appeals for the Second Circuit by summary order issued on July 2, 2004. Dkt. No. 36. In its decision, the Second Circuit concluded that a reasonable factfinder could determine that it was "foreseeable that Bacon might trip, given that handcuffing Bacon's hands behind his back might impair his balance and given that prison regulations prohibit an escorting officer from releasing hold of a handcuffed prisoner", noting further that a reasonable finder of fact could

[9] Defendant has not contested plaintiff's satisfaction of the jurisdictional prerequisites for commencing an action under the FTCA, and reiterated its position in this regard at trial.

also conclude plaintiff's decision to climb the stairs unescorted was not "extraordinary under the circumstances[.]" *Id.* (citations and internal quotations omitted).

Following the assignment of *pro bono* counsel to represent the plaintiff, the matter was the subject of a non-jury trial commenced on September 17, 2007. At the close of plaintiff's direct case, comprised largely of videotaped deposition testimony of the plaintiff and former fellow-inmate Lopez, who were unable to attend the trial in view of their inmate status, defendant moved pursuant to Rule 52(c) of the Federal Rules of Civil Procedure for judgment as a matter of law based upon the alleged failure of plaintiff to establish a *prima facia* case of negligence. A decision in connection with that motion was reserved.[10] The trial was thereafter continued and, following completion of defendant's case, an adjournment was granted in order to afford Bacon the opportunity to submit supplemental, rebuttal testimony, also

---

10 In light of my preference to decide the case based upon all of the evidence adduced at trial, defendant's Rule 52(c) motion will be denied. *See Cifra v. Gen. Elec. Co.*, 62 F. Supp. 2d 740, 741 (N.D.N.Y. 1999) (McCurn, S.J.) (reserving decision on defendants' Rule 52(c) motions and denying those motions in its memorandum decision and order detailing its findings of fact and conclusions of law required under Rule 52(a), wherein the court also found in favor of defendants and dismissed plaintiff's complaint), *rev'd in part on other grounds*, 252 F.3d 205 (2d Cir. 2001); *State v. Almy Brothers, Inc.*, No. 90-CV-818, 1998 WL 438523, at *1 (N.D.N.Y. July 31, 1998) (McCurn, S.J.) (same); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2573.1 (2d ed. 1995).

by way of videotaped testimony, addressing a surveillance video of his physical exercise at LSCI-Allenwood in light of the fact that at the time of his original deposition he had neither seen nor been made aware of that tape. At the close of trial, decision was reserved.

III. DISCUSSION

The legal principles governing plaintiff's claim are by no means controversial. The Federal Tort Claims Act represents a limited waiver by the United States of its entitlement to sovereign immunity from suit for claims of property damage or personal injury, permitting recovery by a plaintiff of damages to compensate "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his [or her] office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the [state] where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see Kosak v. United States*, 465 U.S. 848, 852, 104 S. Ct. 1519, 1522 (1984); *ABC v. DEF*, 500 F.3d 103, 105-06 (2d Cir. 2007); *Guccione v. United States,* 847 F.2d 1031, 1033 (2d Cir. 1988).

Under New York law, which governs plaintiff's FTCA claim, as the

jurisdiction in which the negligent acts now at issue are alleged to have occurred, to establish a claim of negligence a plaintiff must establish three elements, including 1) the existence of a duty of care owed by the defendant to the plaintiff; 2) a breach of that duty; and 3) damage proximately resulting from that breach. *Akins v. Glenn Falls City Sch. Dist.,* 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 648 (1981); *see also Stagl v. Delta Airlines,* Inc., 52 F.3d 463, 467 (2d Cir. 1995); *Rogers v. Westfalia Assoc. Tech., Inc.*, 485 F. Supp. 2d 121, 126 n.8 (N.D.N.Y. 2007); *Craig Test Boring Co., Inc. v. Saudi Arabian Airlines Corp.*, 138 F. Supp. 2d 556, 557 (S.D.N.Y. 2001). "A defendant's conduct is the proximate cause of the "normal or foreseeable consequence[s]" of that conduct." *Bacon v. United States,* 104 Fed. Appx. 208, 209 (2d Cir. 2004) (summary order) (citing *Mirand v. City of New York,* 84 N.Y.2d 44, 50, 614 N.Y.S.2d 372, 375 (1994)). A defendant's conduct is not the proximate cause of a plaintiff's injury, however, if there is an intervening act which is 1) extraordinary under the circumstances; 2) not foreseeable in the normal course of events; or 3) independent of, or far removed from, the defendant's conduct. *Id.* (citing *Derderian v. Felix Contracting Corp.,* 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 169 (1980)). Plaintiff bears the burden of establishing each of the elements of a

negligence claim by a fair preponderance of the evidence. *Craig Test Boring Co., Inc.,* 138 F. Supp. 2d at 557; *Akins,* 53 N.Y.2d at 333, 441 N.Y.S.2d at 648.

In this instance, the first prong of plaintiff's negligence claim is not controverted, the parties having stipulated to the existence of the duty owed by corrections officers, including Officer Robla, to the plaintiff.[11] It is also undisputed that the third element of the negligence calculus has been satisfied; while vigorously contesting plaintiff's claim of experiencing residual effects of the accident, including ongoing debilitating headaches and back pain, defendant readily acknowledges that "[a]s a result of his fall, plaintiff sustained a laceration over his right eye, which required six sutures." Joint Pretrial Stipulation (Dkt. No. 71) § 3(A)(8).

This case, then, turns upon whether Officer Robla breached the duty owed by him toward the plaintiff and, if so, whether that breach was the proximate cause of plaintiff's injuries. The regulations which govern prisoner

---

[11] In New York, corrections workers are charged with a duty to use reasonable care in protecting inmates within their custody from foreseeable risks of harm. *See Colin v. State of New York,* 209 A.D.2d 842, 843, 620 N.Y.S.2d 1015, 1015 (3d Dep't 1994). Despite the existence of this duty, however, corrections officials do not stand as guarantors of an inmate's safety, and negligence may not be inferred solely from the fact that an inmate suffers injury while in custody. *Id.* at 843, 620 N.Y.S.2d at 1015; *Auger v. State of New York,* 263 A.D.2d 929, 930, 693 N.Y.S.2d 343, 345 (3d Dep't 1999).

movement within the FCI Ray Brook SHU require that a prisoner be escorted by one or more officers. Excerpts in the record of a document bearing the title "Special Housing Unit Officer Special Instructions", dated December 27, 2001 – approximately one year after the incident – appear to require that any officer escorting an SHU inmate hold directly onto his or her handcuffs while walking to the end destination. *See* Trial Exhibit P-8. In slight contrast to this directive, seemingly mandating that the escorted inmate's handcuffs be held, the parties have stipulated that at the relevant times "[O]fficer Robla had a duty to maintain a hold over the plaintiff's handcuffs and/or arm during the escort process." Joint Pretrial Stipulation (Dkt. No. 71) § 3(A)(6) (emphasis supplied). Notwithstanding this potential discrepancy, it is clear that by its regulations the BOP requires at a minimum that officer contact be maintained of handcuffed SHU prisoners being escorted outside of their SHU.

I reject the version of events testified to by the plaintiff and, to some degree, substantiated by former fellow inmate Lopez, to the affect that while escorting Bacon back to his cell Officer Robla became distracted, talking with Lieutenant Carlson, and left Bacon unattended, allowing him to opt to leave Robla's side and proceed to the stairs and climb toward the second

tier of the SHU. The credibility of both the plaintiff, who is obviously an interested party, and inmate Lopez, who under normal circumstances would not be considered to have a vested interest in the outcome of this case, was critically undermined by the evidence adduced at trial.[12] Immediately prior to the incident both individuals were under investigation by prison officials at FCI Ray Brook for their admitted attempt to introduce contraband into the facility. Moreover, during his cross-examination, Bacon freely admitted having written a letter to an individual outside the facility in which he acknowledged being a con-artist, a schemer, and in need of money to support him and his family after his release from prison.

In addition to the fact that plaintiff's trial testimony lacked credibility, I find that his version of the relevant events itself is simply not worthy of belief. Given the extreme precautionary measures specified by regulation and taken by prison officials when moving prisoners confined within the SHU – most of whom are there for disciplinary reasons – testified to convincingly by Officers Robla and Mason, it is simply not believable that Officer Robla

---

[12] Interestingly, in an intake form regarding the incident BOP nurse Wendy Thompson reports that when asked on the date of his inquiry how the incident occurred, plaintiff responded "I don't know what happened." *See* Trial Exhibit G-4. Five days later, however, plaintiff authored a written statement offering a comprehensive account of the incident and detailing his claim that Officer Robla was negligent in fulfilling his duties on that date. Trial Exhibit G-5.

would allow the plaintiff to wander freely, unescorted, within the SHU and to climb the stairs to the second tier on his own.

Based upon the evidence adduced, I conclude that Officer Robla sustained his grasp of plaintiff's left arm during the entire course of events immediately preceding Bacon's fall. The version of events recited by Officer Robla during his testimony is entirely plausible, and his maintaining hold of plaintiff's left arm during the fall is fully consistent with plaintiff swinging around and striking the door with the right portion of his head upon losing his footing on the stairs. Accordingly, I find that there has been no breach by prison officials, including Officer Robla, of any duty of care owed to the plaintiff and, consequently, that Bacon has failed to establish his claim of negligence.[13]

## IV. SUMMARY AND DECISION

---

[13] In light of this determination I find it unnecessary to address the extent of plaintiff's injuries and the causation element. I note, however, that the record is conspicuously lacking in any competent medical evidence revealing both the existence of ongoing medical conditions and a causal connection between Bacon's fall and those injuries. The closest plaintiff came to satisfying his burden of establishing a link between his December 19, 2000 accident and recurring back and head pain was though the testimony of Dr. James Brady, a physician employed LSCI-Allenwood, who in response to questioning by plaintiff's counsel stated that it is "possible" that those conditions may have been caused or exacerbated by the fall at FCI Ray Brook.

While corrections workers at FCI Ray Brook were under a duty at the relevant times to use reasonable care to protect the plaintiff from foreseeable risks of harm, and plaintiff undeniably suffered injury to his head while being escorted by Officer Robla back to his cell from a meeting with another prison official, plaintiff has failed to prove by a preponderance of the evidence that a breach of that duty occurred.  Accordingly, it is hereby

ORDERED, that defendant's motion for judgment on partial findings, pursuant to Rule 52(c) of the Federal Rules of Civil Procedure, interposed at the close of plaintiff's direct case, is hereby DENIED; and it is further

ORDERED that the clerk enter judgment in defendant's favor dismissing plaintiff's claim of negligence in this action in all respects; and it is further

ORDERED that the clerk is directed to file the letter submitted by defendant's attorney of record, William F. Larkin, Esq., dated September 12, 2007, together with the accompanying materials, comprising a composite exhibit originally marked as Defendant's Exhibit G-2 and subject of one of plaintiff's motions *in limine,* under seal in light of the sensitive and confidential information contained within the proposed exhibit, which was largely rejected by the court; and it is further

ORDERED that the clerk serve a copy of this decision and order upon the parties in accordance with this court's local rules.

Dated: November 27, 2007
Syracuse, NY

David E. Peebles
U.S. Magistrate Judge